828 F.2d 20
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel S. MERCADO, Defendant-Appellant.
 No. 86-1872.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1987.
 
 Before CORNELIA G. KENNEDY, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Daniel S. Mercado appeals his conviction on two counts of causing the mailing of materials depicting minor children engaged in sexually explicit conduct in violation of 18 U.S.C. Sec. 2252(a)(1). The principal arguments on appeal are that: (1) section 2252(a)(1) is unconstitutional on its face and as applied because it infringes upon defendant's asserted right to possess pedophilic materials in his home; (2) the pedophilic materials should have been suppressed because the search warrant was overbroad and impermissibly general; and (3) the pedophilic materials should not have been admitted because defendant offered to stipulate to the content of the materials. For the reasons that follow, we affirm.
 
 I.
 
 2
 On June 4, 1985, United States Customs mail technicians inspected two parcels addressed to "Mr. David Antinelli, 2118 Harriet, Inkster, Michigan 48141." Each parcel contained a magazine comprised of photographs of male children engaged in sexually explicit conduct. The parcels were seized and forwarded to Special Agent Ramon Martinez, United States Customs Service, Detroit, Michigan.
 
 
 3
 Agent Martinez's investigation revealed that a Michigan driver's license had been issued to Daniel Steven Mercado, identifying his residence as 2118 Harriet Street, Inkster, Michigan 48141, and that Mercado had paid utilities at the address since September 27, 1984. Martinez obtained a search warrant authorizing seizure of the magazines after their delivery to Mercado. The warrant also authorized seizure of camera and video equipment, telephone books and correspondence, safe deposit keys and bank statements, computers and computer software, and other materials depicting juveniles engaged in sexually explicit conduct.
 
 
 4
 On June 10, 1985, the parcels containing the magazines were delivered to Mercado at his home by a United States Postal Service carrier. The search warrant was then executed, resulting in the seizure of the two magazines that had been the subject of the controlled delivery and other magazines that contained depictions of minor children engaged in sexually explicit conduct. After being informed of his Miranda rights, Mercado admitted using the name David Antinelli to conduct correspondence and in ordering the two magazines that were the subject of the controlled delivery.
 
 
 5
 On June 24, 1985, United States Customs mail technicians intercepted three more publications addressed for delivery to David Antinelli. One of the magazines contained depictions of minor children engaged in sexually explicit conduct. The magazine was seized and not delivered.
 
 A. Constitutionality of 18 U.S.C. Sec. 2252
 
 6
 Relying upon Stanley v. Georgia, 394 U.S. 557 (1969), defendant argues that 18 U.S.C. Sec. 2252 is unconstitutional on its face and as applied because it infringes upon his right to possess pedophilic materials in his home. The Court held in Stanley that "mere private possession of obscene material" is not a crime, explaining that the state's "broad power to regulate obscenity ... does not extend to mere possession by the individual in the privacy of his own home." 394 U.S. at 568. It is unlikely that the right to private possession of obscene material recognized in Stanley extends to private possession of pedophilic materials. "[T]he State's interests in regulating child pornography are radically different than those in regulating obscenity. The State's primary concern is protecting the child participants from that type of sexual abuse [and] the State's interests in regulating pedophilic pornography may well extend into the private home." United States v. Andersson, 803 F.2d 903, 907 n. 3 (7th Cir.1986), cert. denied, 107 S.Ct. 962 (1987); see also United States v. Marchant, 803 F.2d 174, 177-78 (5th Cir.1986). However, we need not decide this question because defendant was not charged with, nor convicted of, mere possession of pedophilic materials.
 
 
 7
 Section 2252(a)(1) does not criminalize mere possession of pedophilic materials; rather, the statute proscribes transportation of pedophilic materials in interstate or foreign commerce or through the mails.[1] The Court held in United States v. Reidel, 402 U.S. 351, 356 (1971), that Stanley does not preclude proscription of transportation of obscene materials through the mails for private use, explaining that Stanley does not require recognition of "a constitutional right ... to distribute or sell obscene materials." See also United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 376 (1971) (Stanley "does not extend to one who is seeking ... to import obscene materials from abroad, whether for private use or public distribution."). Moreover, the Court held in United States v. Orito, 413 U.S. 139, 141 (1973), that Stanley does not preclude regulation of interstate transportation of obscene materials for private use, expressly rejecting the notion that "the right to possess obscene material in the privacy of the home ... creates a correlative right to receive it...." See also United States v. 12 200-Ft. Reels of Super 8MM. Film, 413 U.S. 123, 128 (1973) (Stanley does not permit importation of obscene material for private use; right to possess obscene material does not give rise to right to sell or give it to others). "Thus even if [defendant] has a right to possess child pornography in his home, that right in no way extends to acquiring or providing such material for private use." Andersson, 803 F.2d at 906-07 (footnote omitted); see also United States v. Gantzer, 810 F.2d 349, 352-53 (2d Cir.1987); Marchant, 803 F.2d at 178; United States v. Hurt, 795 F.2d 765, 771 (9th Cir.1986), modified on other grounds, 808 F.2d 707 (9th Cir.1987); United States v. Hale, 784 F.2d 1465, 1471 (9th Cir.), cert. denied, 107 S.Ct. 110 (1986); United States v. Miller, 776 F.2d 978, 980-81 (11th Cir.1985) (per curiam), cert. denied, 106 S.Ct. 1659 (1986).
 
 B. Validity of the Search Warrant
 
 8
 Defendant argues that the pedophilic materials seized pursuant to the search warrant should have been suppressed because the warrant authorized seizure of items other than the pedophilic materials such as cameras, video equipment, correspondence, and records for which probable cause did not exist. Where probable cause exists to seize some but not all of the items described in the warrant, the entire warrant is not tainted and not everything seized in the course of the search need be suppressed. Worthington v. United States, 726 F.2d 1089, 1092 (6th Cir.), cert. denied, 469 U.S. 827 (1984). "The essence of the severance doctrine is that evidence seized pursuant to probable cause should be admissible even if the language of the search warrant is not fully supported by probable cause." 726 F.2d at 1097 (Contie, J., concurring). Thus, we must evaluate whether there was probable cause to seize the evidence defendant wished to suppress.
 
 
 9
 Agent Martinez's affidavit reciting the fact that pedophilic materials had been intercepted en route to defendant's residence provided sufficient probable cause to seize the pedophilic materials. Under the standard announced in Illinois v. Gates, 462 U.S. 213 (1983), the task of a magistrate issuing a search warrant is to determine whether, in light of all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Courts are to interpret affidavits in a "practical, common-sense" fashion. 462 U.S. at 238. The magistrate's determination that probable cause existed is entitled to great deference. Id. at 236. The magistrate in the present case made such a "practical, common sense decision," having ample reason to believe that defendant was in possession of pedophilic materials that had been mailed or transported in violation of section 2252(a)(1). Although the magistrate could not have been certain, there was at least a fair probability that any pedophilic materials in defendant's possession had been transported in interstate or foreign commerce or through the mails.
 
 
 10
 Defendant also argues that the pedophilic materials seized pursuant to the search warrant should have been suppressed because the warrant was a "general warrant" permitting a "general exploratory, rummaging" through defendant's belongings. "General warrants, by failing to describe particularly the things to be seized, create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." United States v. Savoca, 761 F.2d 292, 298-99 (6th Cir.), cert. denied, 106 S.Ct. 153 (1985). Although the warrant in the present case was broad in scope, it was not a general warrant because it did not give the executing officers impermissible discretion to determine what items would be seized. Thus, "the actual issue is whether there was probable cause to support a search of this breadth, not whether the warrant was 'general.' " Savoca, 761 F.2d at 299; see also Worthington, 726 F.2d at 1094-95 (Contie, J., concurring). We have already determined that probable cause existed to seize the pedophilic materials, and we need not determine whether probable cause existed to seize the other items mentioned in the warrant. Worthington, 726 F.2d at 1092.
 
 C. Evidentiary Rulings
 
 11
 Defendant argues that the district court abused its discretion by permitting the prosecution to introduce the pedophilic materials after defendant offered to stipulate that the materials depicted children engaged in sexually explicit conduct. The general rule that "a party may not preclude his adversary's offer of proof by admission or stipulation ... is qualified by Rule 403 of the Federal Rules of Evidence," which provides that evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." United States v. O'Shea, 724 F.2d 1514, 1516 & n. 2 (11th Cir.1984) (footnotes and citation omitted); see also United States v. Allen, 798 F.2d 985, 1001 (7th Cir.1986); United States v. DeJohn, 638 F.2d 1048, 1053 (7th Cir.1981); United States v. Provenzano, 620 F.2d 985, 1003-04 (3d Cir.), cert. denied, 449 U.S. 899 (1980); United States v. Grassi, 602 F.2d 1192, 1197 (5th Cir.1979), vacated on other grounds, 448 U.S. 902 (1980). The determination whether "to exclude evidence under Rule 403 is 'committed to the sound discretion of the trial court,' [and] [a]n offer to stipulate is one factor that the trial court should consider in making [that] determination...." O'Shea, 724 F.2d at 1516 (quoting Grassi, 602 F.2d at 1197); see also Allen, 798 F.2d at 1001; DeJohn, 638 F.2d at 1053; Provenzano, 620 F.2d at 1003-04.
 
 
 12
 Defendant's offer to stipulate notwithstanding, the district court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. The pedophilic materials named in the indictment were offered to prove that defendant had violated section 2252(a)(1) by causing the mailing of materials containing visual depictions of minors engaged in sexually explicit conduct. The pedophilic materials not named in the indictment were offered to prove absence of mistake in the controlled delivery and scienter under section 2252(a)(1) because they showed defendant's interest in child pornography. The offered stipulation diminished but did not eviscerate the probative value of the pedophilic materials. "A cold stipulation can deprive a party 'of the legitimate moral force of his evidence,' ... and can never fully substitute for tangible, physical evidence or the testimony of witnesses." Grassi, 602 F.2d at 1197 (quoting 9 Wigmore On Evidence Sec. 2591, at 589 (3d ed. 1940) (district court did not abuse its discretion under Rule 403 by permitting introduction of films where defendant offered to stipulate that the films were obscene); see also Allen, 798 F.2d at 1001-02; Provenzano, 620 F.2d at 1004. On the other hand, the potential for unfair prejudice to defendant was minimized by the fact that potential jurors who did not believe they could put aside any inflammatory impact the pedophilic materials might have were excused for cause.
 
 
 13
 Defendant also argues that the district court abused its discretion by refusing to grant a mistrial after Agent Martinez volunteered "that those that order child pornography often keep detailed lists of children they have molested." The district court's refusal to grant a mistrial will constitute an abuse of discretion where the gratuitous testimony is so prejudicial as to deny the defendant's right to a fair trial. United States v. Terry, 729 F.2d 1063, 1070 (6th Cir.1984). In light of the overwhelming evidence of defendant's guilt and the district court's emphatic instruction to the jury to disregard the remark, we cannot conclude that defendant was deprived of a fair trial.
 
 III.
 
 14
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 2252(a)(1) provides:
 Any person who ... knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if ... the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and ... such visual depiction is of such conduct ... shall be punished as provided in subsection (b) of this section.